82 So.2d 328

## O. G. HOLLEY et al.

v.

## Z. H. JOSEY.

### 4 Div. 779.

Supreme Court of Alabama.

April 14, 1955.

Rehearing Denied Sept. 22, 1955.

Prestwood & Prestwood, Andalusia, for appellee.

Albrittons & Rankin, Andalusia, for appellants.

LIVINGSTON, Chief Justice.

Z. H. Josey filed suit in the Circuit Court of Covington County, Alabama, against O. G. Holley, W. T. Reeves and J. V. Burkett

claiming damages for the death of his minor son, Murry Austin Josey. The complaint consisted of two counts: Count 1 for simple negligence, and Count 2 for the willful or wanton misconduct of the defendants. The defendants, O. G. Holley and W. T. Reeves, interposed demurrers to each count of the complaint, which were sustained as to Count 2 of the complaint and overruled as to Count 1. No error is assigned concerning the sufficiency of Count 1 of the complaint. The defendants pleaded in short by consent the general issue with leave, etc. Count 1 of the complaint was submitted to the jury as to all three of the defendants, and resulted in a judgment against all three defendants in the sum of $6,500. Timely motions by defendants Holley and Reeves were overruled by the trial court, and they appealed. Burkett did not appeal, nor did he join in the appeal of Holley and Reeves.

We will set out only so much of the testimony as is necessary to a discussion of the points raised by the Assignments of Error.

Murry Austin Josey was killed on a public highway at about 1:00 a.m. on July 13, 1952.

On the night of July 13, 1952, appellant Holley carried a group of baseball players of the Greenville, Alabama, semi-pro baseball team to a semi-pro baseball tournament at Andalusia, Alabama. After the game, which seems to have been delayed by rain, W. T. Reeves, one of the Greenville players, was driving Mr. Holley's automobile with Mr. Holley seated on the front seat by him, and three Greenville players riding on the rear seat of this automobile as the car left Andalusia to return to Greenville. After the automobile driven by Mr. Reeves passed Red Level the occupants of the automobile driven by him saw another automobile in front of them. Although Mr. Reeves and the parties in his car did not know this fact as they approached the car in front of them, it was owned and being driven by Mr. J. V. Burkett, the other defendant in the court below. The section of the road was hilly, and while Mr. Reeves was driving close behind the car which was driven by Mr. Burkett, both cars passed over the body of Murry Austin Josey. The testimony was to the effect that neither automobile was exceeding the speed limit. Both cars stopped after passing over the body of Murry Austin Josey. Upon examination, Josey was found to still be alive, but died within a few minutes.

Josey was killed about a mile and a quarter to a mile and a half in a northerly direction from Red Level and towards McKenzie. The testimony is to the effect that after passing through Red Level, the Holley car being driven by Reeves was some considerable distance behind the Burkett car, which was not being driven as fast as the Holley car. For the purpose of passing, the Holley car approached to within a short distance of the Burkett car, variously estimated from 20 to 50 feet. As the two cars passed over the crest of a hill in this position, Burkett, according to his testimony, saw in the right lane of the highway in the direction he was driving, what he thought was a paste board box top, or some other object. Burkett testified that he did not have time to stop his car but straddled the object with the wheels of the car. He further testified that he heard a light lick underneath his car as he passed over the object.

Mr. Holley's testimony, and that of the occupants of his car, was to the effect that the first time they saw Josey he came out from under the rear wheels of the Burkett car, and that the Burkett car was bumping over it, and the body was turning counter-clockwise to the direction in which they were going. This testimony was also to the effect that the Holley car straddled the body of Josey, but did not touch it, and the wheels did not run over him. Burkett further testified that the Holley car had blown at him at one or two intervals down the highway, indicating an intention to pass, but the car never passed him.

Officers summoned to the wreck made an examination of the roadway at the point and later made an examination of the underside of the Holley car. They testified that they found hair, blood and threads of cloth under the Holley car. Mr. Brooks,

the Assistant State Toxicologist, examined the Holley car in Montgomery four days after the accident, but testified that he saw no blood, hair, nor fragments of cloth underneath the Holley car, but that he did see where some slight rubbing had occurred under the Holley car. Dr. Rehling, the State Toxicologist, made an examination of objects found on the underside running gear of the Burkett car, and found that it contained blood, hair and clothing.

Young Josey was last seen the night of July 13th between 12 and 1 o'clock on the highway leading from McKenzie to Red Level trying to thumb a ride. He was on the opposite side of the highway from which his body was found. Two witnesses who went to the scene of the accident about daylight the morning of the accident testified that they found on the left side of the highway in the direction in which the cars were going, and at about the edge of the blacktop, a piece of a cap, some teeth and a piece of flesh with a bone in it, a piece of watch chain, and blood marks on the pavement. They further testified that these objects were some 20 or 30 feet from the spot where young Josey's body finally came to rest, and from the body, was in the direction from which the cars were approaching. The blood marks angled across the roadway to near the point where Josey's body was picked up. A part of a cap was also found near the spot where Josey's body was picked up. Burkett testified that the lights from the Holley car were shining in his rear-view mirror and distracted him to a certain extent near the point where the two cars passed over Josey's body.

Appellant's Assignments of Error contain eleven grounds. Assignments 1 and 11 are based upon the trial court's action in refusing to grant appellant's motion for a new trial. Assignments 2, 3, 4, 5 and 7 are based on the trial court's refusal of the affirmative charge for the defendants in various forms.

In the case of White Swan Laundry Co. v. Wehrhan, 202 Ala. 87, 79 So. 479, 480, this court said:

"1. That, while public highways are open to the proper use of automobiles and other motor vehicles, the law exacts of operators of such machines therein a prudent and careful regard for the rights of others who are or may be lawfully using the public way; and the operator is liable for the consequences of negligence, in the operation of any such motor vehicle, to the injury of another traveler who is in the proper use and enjoyment of the common highway. Barbour v. Shebor, 177 Ala. 304, 58 So. 276; McCray v. Sharpe, 188 Ala. 375, 66 So. 441; Reaves v. Maybank, 193 Ala. 614, 69 So. 137; Birmingham R. L. & P. Co. v. Smyer, 181 Ala. 121, 61 So. 354, 47 L.R.A.,N.S., 597, Ann. Cas.1915C, 863; Christy v. Elliott, 216 Ill. 31, 74 N.E. 1035, 1 L.R.A.,N.S., 215, 108 Am.St.Rep. 196, 3 Ann.Cas. 487; 28 Cyc. pp. 25, 26; 2 R.C.L., 'Automobiles,' p. 1182 et seq.; Huddy on Automobiles, §§ 45, 46.

"2. That degree of care to be observed by such operators, with respect to the rights of others lawfully using a public way, is the care a reasonably prudent man would exercise and observe, under like circumstances. That is, the operators of such vehicles, as well as pedestrians on the highway, must recognize the rights of others, and take reasonable care and precaution to avoid inflicting wrong and injury. Barbour v. Shebor, supra; McCray v. Sharpe, supra; Reaves v. Maybank, supra; Alabama City G. & A. R. Co. v. Lumpkin, 195 Ala. 290, 70 So. 162; Birmingham R. L. & P. Co. v. Williams, 158 Ala. 381, 48 So. 93; Cecchi v. Lindsay, 1 Boyce 185, 24 Del. 185, 75 A. 376; 28 Cyc. 27, 28; 2 R.C.L. p. 1182 et seq.; Berry Law of Automobiles, § 124, p. 113; Id., § 171, p. 166; Huddy on Automobiles, §§ 46, 47.

"3. What is the exercise of reasonable care by an operator of a motor vehicle on public highways depends upon the circumstances of the particu-

lar case, as bearing upon the conduct and the affairs of men; for what may be deemed reasonable and prudent in one case may, under different circumstances and surroundings, be gross negligence. Brown & Flowers v. Central of Georgia R. Co., 197 Ala. 71, 72 So. 366; McCray v. Sharpe, supra; Perkins v. Galloway, 194 Ala. 265, 69 So. 875, L.R.A.1916E, 1190; Reaves v. Maybank, supra; Hood & Wheeler Fur. Co. v. Royal [200 Ala. 607], 76 So. 965; Grand Trunk Railway Co. of Canada v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 36 L.Ed. 485.

"4. The terms 'ordinary care' and 'reasonable prudence,' as applied to the conduct and the affairs of men, are declared to have only a relative significance, depending upon the special circumstances and surroundings of the particular case, and to defy arbitrary definition. When a given state of facts is such that reasonable men may differ as to whether or not negligence intervened, as whether or not ordinary care and reasonable prudence characterized the actions and conduct of an actor, the determination of such question becomes a matter for the jury. Grand Trunk Ry. Co. of Canada v. Ives, supra; Baltimore & O. R. Co. v. Griffith, 159 U.S. 603, 16 S.Ct. 105, 40 L.Ed. 274; Texas & Pacific Ry. Co. v. Gentry, 163 U.S. 353, 16 S.Ct. 1104, 41 L.Ed. 186; Warner v. Baltimore & Ohio R. Co., 168 U.S. 339, 18 S.Ct. 68, 42 L.Ed. 491; Pennsylvania R. Co. v. White, 88 Pa. 327, 333; 12 Rose's Notes, U.S.Rep. 171, 176.

"5. 'The question of negligence is one of law for the court only when the facts are such that all reasonable men must draw the same conclusion from them.' Gardner v. Michigan Cent. R. Co., 150 U.S. 349, 14 S.Ct. 140, 37 L.Ed. 1107; Grand Trunk Railway Co. of Canada v. Ives, supra; Texas & P. Railway Co. v. Cox, 145 U.S. 593, 606, 12 S.Ct. 905, 36 L.Ed. 829; Texas & Pac. Ry. Co. v. Gentry,

supra; Chicago, St. P., M. & O. R. Co. v. Nelson [8 Cir.], 226 F. 708, 141 C.C.A. 464; Kreigh v. Westinghouse, Church, Kerr & Co., 214 U.S. 249, 29 S.Ct. 619, 53 L.Ed. 984; Delk v. St. Louis & S. F. R. Co., 220 U.S. 580, 31 S.Ct. 617, 55 L.Ed. 590; Lake Shore & M. S. R. Co. v. Miller, 25 Mich. 274; Emens v. Lehigh Valley R. Co., D.C., 223 F. 810.

"Mr. Justice Lamar's observations touching 'reasonable prudence' have been often approved by other jurisdictions, state and federal; and were quoted approvingly by this court, as follows, in the case of Reaves v. Maybank, supra (193 Ala. [614], 618, 619, 69 So. 137, 138):

" 'There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.'

New Jersey Railroad & Transp. Co. v. Pollard, 22 Wall. 341, 22 L.Ed. 877; Delaware L. & W. R. Co. v. Converse, 139 U.S. 469, 11 S.Ct. 569, 35 L.Ed. 213; Thompson v. Flint, etc., R. Co., 57 Mich. 300, 23 N.W. 820; Lake Shore & M. S. R. Co. v. Miller, 25 Mich. 274; Grand Trunk R. Co. of Canada v. Ives, supra, 144 U.S. 408, 417, 12 S.Ct. 679, 36 L.Ed. 485."

This court in the case of Watt v. Combs, 244 Ala. 31, 12 So.2d 189, 195, 145 A.L.R. 667, said:

"* * * it is equally well settled in this jurisdiction that if one is guilty of negligence and this negligence concurred or coalesced with the negligence of another, and the two combine to produce a given result, each is liable for the damages, and the negligence of each will be deemed the proximate cause of the injury producing the damages. * * *"

■ Under the facts of this case, we are of the opinion, and hold, that the question of liability of Holley and Reeves was one for the jury, and that these defendants' request for the affirmative charge was properly refused, and that the defendants can take nothing by Assignments of Error 2, 3, 4, 5 and 7.

We are also clear to the conclusion that Assignments of Error 1 and 11 based on the trial court's refusal to grant appellants' motion for a new trial are also unavailing under the facts in this particular case. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

■ Appellants insist that the court erred to reversal in refusing to give the following written charge requested by defendants Holley and Reeves:

"I charge you, Gentlemen of the Jury, that the driver of an automobile has the right to presume that no person will be lying in the travelled portion of a public highway."

This charge would absolve the driver of an automobile of the duty of using ordinary care. The driver of an automobile must keep a reasonable lookout for danger or obstructions while driving along the public road. He cannot presume that no person is in the roadway. Tit. 36, § 5, Code 1940; Tit. 36 § 15, Code 1940.

If a motorist cannot see clearly, he has no right to assume that his course is free of danger, but must anticipate that some hazard lies immediately beyond his range of vision. Sec. 689.5 of Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 1, Part 2, p. 586. The only rule that can govern the interval to be maintained between two automobiles proceeding in the same direction is that of reasonable care under the circumstances. A motorist has a right to follow another motorist at a reasonable and safe distance.

Mr. Justice Foster, speaking for the court in the case of Cooper v. Agee, 222 Ala. 334, 132 So. 173, 174, said:

"It is the rule that the driver of an automobile must keep a lookout for those who are also using the highway."

And further, Justice Foster added:

"The motorist must exercise due care to anticipate the presence of others upon the highway and not to injure him after he is aware of his presence. 1 Berry on Auto. §§ 337, 339; 42 C.J. 909; 2 R.C.L. 1184. He is chargeable with knowledge of what a prudent and vigilant operator would have seen, and is negligent if he fails to discover a vehicle which, or a traveler whom, he could have discovered in time to avoid the injury in the exercise of reasonable care. 42 C.J. 911. The jury may infer that defendant was negligent either in the failure to keep a lookout and see plaintiff or that, if he saw plaintiff, he neglected to use due care to avoid injuring him. Stone v. Mullen, 257 Mass. 344, 153 N.E. 565."

Sec. 15, Tit. 36, Code of Alabama 1940, provides, in part, as follows:

"Following too closely.—(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due

regard to the speed of such vehicle and the traffic upon and condition of the highway."

For these reasons, this requested charge was properly refused.

 Appellants objected to the introduction of testimony by W. C. King and Lewis Cantaline as to objects found at the scene of the accident about six hours after the accident. Mr. King and Mr. Cantaline went to the scene of the accident after daylight (Mr. King states, "I suppose about 7 o'clock in the morning."). The testimony is to the effect that the accident occurred upon a heavily traveled highway, between 12 and 1 o'clock a. m. It was further shown that a number of people stopped at the scene of the accident on the night it occurred. Testimony of Mr. King and Mr. Cantaline was admitted as to parts of a cap, blood stains and other objects found near the place where young Josey's body was picked up by the undertaker.

We are aware of our cases, notably Kress & Co. v. Barratt, 226 Ala. 455, 147 So. 386; Bradley v. Deaton, 208 Ala. 582, 94 So. 767, and Southern R. Co. v. Lefan, 195 Ala. 295, 70 So. 249, which hold, in substance, that if a party, in an effort to show negligence, attempts to introduce evidence as to conditions before or after the time of the accident, it must be first made to appear that the conditions were substantially the same on the two occasions. But the rule as expressed by these cases is limited to where it is an attempt to show negligence, as for instance, the condition of a sidewalk, or whether or not trailer lights were burning, or whether or not an awning was properly secured. In this instance, the testimony of Mr. King and Mr. Cantaline was of a different nature, and seems in part to be an effort to show the point at which young Mr. Josey was struck. We feel that defendants below, appellants here, are entitled to show all the facts surrounding the observations of Mr. King and Mr. Cantaline, including the lapse of several hours' time, the fact that many people were gathered around the scene of the accident, the fact that there was much travel over this highway, all to affect the credibility of their testimony and the weight which the jury would give to it. However, under the circumstances of this case, we feel that their testimony was admissible. Appellants can take nothing by Assignments of Error numbered 8 and 9.

Brief of counsel for appellants merely repeats Assignment of Error No. 10, and falls far short of compliance with Supreme Court Rule 10, Tit. 7, Code 1940, Appendix; Hodge v. Rambo, 155 Ala. 175, 45 So. 678; Alsup v. Southern Mfg. Co., 248 Ala. 405, 27 So.2d 781.

We find no error to reverse and the case is, therefore, affirmed.

Affirmed.

SIMPSON, GOODWYN and MERRILL, JJ., concur.